Brinkerhoff, J.
The questions arising in this ease are somewhat numerous, and a report of the case may best be made intelligible by taking up the questions as they arise in the record, and disposing of them in detail.
The original action was brought by Gray, the defendant in error, *310 against the plaintiffs in error, upon a note for $1,946.06, payable two hundred and fifty-five days after date, to Gray’s order, signed by W. C. Davis & Co., and dated February 1, 1859. The petition is in the usual form.
The defendants below filed two answers and eight amended answers.
The plaintiff below demurred to the first and second answers and to the first amended answer. These demurrers were sustained by the court below, and this is assigned for error.
The first answer and the first amended answer are substantially identical, except in this: That the averment contained in’ the last clause of the latter is not found in the former ; and so, if the demurrer to the first amended answer was rightfully sustained, there was no error in the same ruling in respect to the first answer.
The first amended answer is as follows :
“ The note, in the petition mentioned, was given by the defendants to the plaintiff- for patent fees for the pretended right to construct and sell a machine called ‘Atkin’s self-raking reaper and mower,’ in Ohio, Kentucky, and Tennessee, and in certain counties in Indiana, under a contract entered into between the plaintiff, as agent for one John S. Wright, and the defendants, and E. Dutton. The plaintiff represented that it was patented by the United States to Jearum Atkin, and that he had the exclusive right to construct and sell said machine according to a model indicated by him. The defendants and said Dutton relied on his representations, *and in consideration of a conveyance to them of said supposed right, they agreed to construct the same and sell the same in said territory, according to said model, and that they would pay a patent fee of thirty dollars to him for each one which they should make and sell. That Dutton withdrew from the contract, and the defendants succeeded to the same. They made of the same about eight hundred, and sold about three hundred and twenty of them, and, in part payment of the patent fees on them, the defendants gave the note in the petition mentioned.
“ The plaintiff says that at the time-of entering into said contract, there were claims by other parties that they had patents on certain attachments used in the construction of said machine, of which the defendants were ignorant. In order to induce the defendants to settle with him, and pay him the patent fees on the machines which they had sold, plaintiff agreed to procure releases to be *311 obtained from all whose patents were infringed, or alleged to be infringed, by the construction of said machine by the defendants. The defendants, relying on said promise, gave the note sued on. But they say that one Obed Hussey, one Ketchum, and McCormick;; and other persons well known to the plaintiff, claim to have patents on certain parts of the machine which the defendants constructed and sold under said contract, and they claim compensation for the said supposed infringement, and threaten the defendants that unless they pay for said infringements, they will sue the defendants for those sold and enjoin the sale of those on hand; and the plaintiff refuses to procure releases from said persons, as he is bound to do. And the defendants say that the amounts demand-able from them by said parties are greater than the amount claimed by the plaintiff for patent fees on said machines so constructed.”
We think there was no error in sustaining the demurrer to this answer. The substance of the answer is, that there were outside parties who claimed that in the manufacture and sale of the machine mentioned, there was an infringement of patents belonging to them. There is no allegation of suit, cost, loss, or damage, against or to them; ñon constat that *there ever will be, or that such claim can ever be established. From aught alleged in this answer, it does not appear that even a counter-claim has yet ripened in favor of defendants below, much less a defense to the action.
The second answer is as follows:
“ The promissory nóte, in the petition mentioned, was given by the defendants to the plaintiff for patent fees for the right to make and sell, in certain states and counties in the United States, a machine called by the plaintiff ‘Atkin’s self-raking reaper and mower.’ The plaintiff, about the month of October, 1857, represented that he had the exclusive right to make and sell the same in said territory according to a model furnished by himself, and entered into a contract with the defendants and one E. Dutton, conveying to them said pretended right to construct the same in its several parts, as near as might be, like said model, in consideration of which they bound themselves to pay to the plaintiff, as agent, thirty dollars for each machine they should make and sell. Under said contract they made about eight hundred of said machines, and sold about three hundred and twenty of them, the rest remaining unsold. The defendants afterward succeeded said E, *312 Dutton in said contract, and on a settlement with the plaintiff for the number made and sold, gave him the note in the petition mentioned. But the defendants say that the machine, of which the said plaintiff sold them the pretended right to make and sell, was nol patented to the said Atkin, and the plaintiff had no right to convey to them, or any other person, authority to make or sell the same, as he pretended to do ; and so they say that the consideration for said note has wholly failed.”
"Whether the demurrer to this answer was properly sustained by the court below or not, is a question which it is not now material for us to consider, because all the averments of fact which it contains are embraced in amended answers afterward filed by defendants below, on which issues were taken by reply, and so the defendants below had the full benefit of them in the subsequent progress of the case.
The subsequent pleadings in the case are as follows :
Second amended answer : “And for a further answer the *defendants come and say that the promissory note, in the petition mentioned, was given by the defendants to plaintiff for patent fees •for the right to make and sell, in certain states and counties in.the United States, a machine called by the plaintiff ‘Atkin’s self-raking reaper and mower,’ and which the plaintiff, about the month of ■October, 1857, represented that he had theexclusive right to make and sell the same in said territory according to a model furnished by himself, and represented that the same was patented by Jearum Atkin; and he entered into a contract with the defendants and one R. Dutton, conveying to them said pretended right, and binding them to construct the same in its several parts, as near as might be, like .said model; in consideration of which they bound themselves to pay to the said plaintiff, as agent, thirty dollars as a patent fee for each machine which they should make and sell. Under said contract they made about eight hundred of said machines, and sold about three hundred and twenty of them; the rest remained unsold. The defendants afterward succeeded said R. Dutton in said contract, and on a settlement with the plaintiff for the patent fees for the number made and sold, gave him the note in the petition mentioned. But the defendants say that the machine, of which the said plaintiff sold them the pretended right to make and sell, was not patented to the said Atkin by the United States, and the plaintiff never acquired any right, and had no right to convey to them, *313 •or to any other person, authority to make or sell the same, as he pretended to do; and so they say that the consideration for said note has wholly failed.”
Third amended answer: “ The defendants, for a further answer, say that said note was given by the defendants in payment of patent fees, for the right to construct and sell a reaping machine called ‘Atkin’s self-raking reaper,’ by virtue of a contract entered into on the 1st of October, 1853, between the plaintiff, as.agent of one John S. Wright, and the defendants and R. Dutton, doing business under the firm name of R. Dutton & Co. The said Dutton afterward withdrew from said contract, and the defendants, with the consent of •the plaintiff, succeeded to the same. Said defendants were *required, by the contract, to construct said reapers according to a model designated by the plaintiff; and they did construct and sell a large number on that model. At the time of entering into said contract, the plaintiff represented that said reaper, so constructed, was patented by the United States to one Jearum Atkin, and that the plaintiff was fully authorized to give to said R. Dutton & Co. the right to construct and sell the same, which representation the defendants and Dutton believed. But the defendants say that said reaper, so constructed, was not patented by the United States to said Atkin, and the plaintiff had no right to contract with said defendants and Dutton for authority to make and sell the same.”
Fourth amended answer: “ The said defendants, for a further answer, say that said note was given in payment for patent fees, for the right to construct and sell a reaper known as ‘Atkin’s self-raking reaper.’ The plaintiff represented to said defendants that said reaper was patented by the United States to Jearum Atkin, and that the plaintiff was authorized to convey to the said defendants and Dutton the right to make and sell the same, according to a given model, in certain territory in the United States, which representations the defendants and Dutton believed. The plaintiff, by contract, agreed'to convey said right to defendants and Dutton; and, pursuant to said contract, they constructed, according to said model, and sold a large number, and gave their note, in the petition mentioned, for the supposed patent fee for the right to make and sell the same. But the defendants say that the said reaper, constructed according to the model given by the plaintiff, was an infringement upon other valid patents issued by the United States, and said defendants and Dutton did not, by said contract, acquire any right to *314 make and sell said reaper. And the defendants say that the consideration for said note has entirely failed.”
Fifth amended answer: The note was given for the right to make a machine called “Atkin’s self-raking reaper and mower.” The said patent ,is not new and useful, and is void for want of novelty.
Sixth amended answer: Defendants do not owe said sum nor *any part thereof, because the consideration of said note has entirely failed.
Seventh amended answer: The note was given pursuant to agreement, by virtue of which defendants were bound to construct said reapers like that made by Dutton for the harvest of 1857. All the machines were made on that model. Said machines were not patented to Atkin; but there were used in its construction certain attachments and jirinciples which were patented to other parties; viz: the open guard to O. Hussey, and other parts and other principles to C. H. McCormick & Co., Ketchum, and to other parties; and the machine would be useless but for such attachments.
Eighth amended answer: The note was given by virtue of the contract to make machines on a given model. The machines were all made on that model, and the note was given for the pretended right to make and sell said machines. The machines were pf no value whatever; wherefore the consideration of said note has failed.
The several replies of the plaintiff below, to the foregoing amended answers, are as follows:
First reply: “ And now comes the said plaintiff, Charles M. Gray, and for reply to the second defense in said amended answer set forth, denies that he, at any time, represented to said defendants that the machine called ‘Atkin’s self-raking reaper and mower,’ was, in all its parts and appliances, patented by Jearum Atkin; and avers that, at the time said contract was made, defendants well knew that said reaper and mower was not so patented as aforesaid; denies that said promissory note was given for patent fees on said entire machine, and avers that said promissory note was given in part payment of the patent fees for the right to use certain new, useful, and valuable improvements in the construction of reaping machines, which were covered and protected by letters patent issued by the United States. Plaintiff denies that *315 tbe machine, of which he sold defendants the right to make and sell, was not patented to said Atkin; and denies that he had not authority or right to convey to them authority to make and sell said machines; and denies that the consideration of said note has failed, in whole or in part.”
^Second reply: “ For a reply to the third defense, in said answer set forth, plaintiff denies that he ever did represent to defendants that the reaper and mower that was designated as a model, was, in all its parts and appliances, patented to said Atkin, and avers that defendant well knew that it was not. Plaintiff avers that, in the construction of said machine, commonly called ‘Atkin’s self-raking reaper,’ certain valuable and new improvements are used; and that it was for the right to use said improvements that the defendants agreed to pay said patent fees; that said improvements were covered and secured by letters patent duly issued by the United States; that plaintiff had full right and authority to convey to defendants the right to use said reaper and mower; and that plaintiff did convey to said defendants said right, and that said defendants .used and enjoyed the same, and realized great profit therefrom. Said plaintiff denies that said contract was entered into on 1st day of October, 1853, and avers that the same was made on the 1st day of October, 1857.”
Third reply: “ And for reply to the fourth defense, in said answer set forth, plaintiff denies that, at the time the said parties entered into said contract, he represented that the said reaper, in all its parts, was patented to Jearum Atkin, or that he had any authority to give or grant to defendants the exclusive right to make all the several parts, attachments, or appliances, belonging to and connected with said reaper, but avers that the patent foes which the defendants agreed to pay, and for part of which said promissory note was given, were for the right to use certain valuable improvements in reaping machines, which improvements were secured by letters patent duly issued by the United States. Plaintiff denies that, by said contract, said defendants did not acquire any right to make and sell said machine, with the aforesaid valuable improvements thereto attached, and avers that said defendants accepted the conveyance of the same, and used and enjoyed said valuable improvements, and realized great profit therefrom. Plaintiff denies that the consideration for said note failed, in whole or in part.”
*316 Fourth reply: “For reply to the fifth defense, in said answer *set forth, said plaintiff denies that said note was given for patent fees for the right to make and sell said reaper and mower, in all its several parts and appliances; but avers that the same was given for the right to use certain valuable improvements in reaping machines, which had been secured by letters patent duly issued by the United States. Plaintiff denies that said patent is not for a new and useful invention, and denies that the same is not novel,” etc.
Fifth reply: “ For reply to the sixth defense, in said answer set forth, plaintiff denies that the consideration for said promissory note has failed, in whole or in part.”
Sixth reply: “ For reply to the seventh defense, in said answer •set forth, plaintiff denies the truth of the several allegations and statements therein contained.”
Seventh reply: “ For further reply to each and all of the said several defenses, in said answer set forth, said plaintiff avers that, on the first day of February, a. d. 1859, there was a settlement made, by and between the said parties, of all the matters and claims connected with the manufacture and sale of said reapier and mower, and for the patent fees due from said defendants to said plaintiff as aforesaid; that in said settlement all of the said several pretended defenses in said answer set forth, were duly and fully considered, adjusted, and settled by said parties; and that the said defendants, for a valuable consideration which they accepted, to wit, in consideration that said defendants should retain in their hands the sum of one thousand dollars out of the sum then due' from them for patent fees on the said machines, then already made and sold by them, for the purpose of securing them against loss or damage, by reason of certain claims made by Messrs. Howard & Co., of Buffalo, N. Y., for alleged infringement of one Ketchum’s patent, in the construction and sale of said machines by said defendants; and for the further consideration, to wit, that the said contract, by which the said defendants bound themselves to pay a patent fee of thirty dollars oil each and every machine by them made and sold under said contract, should then be canceled and abrogated, and the said defendants then released from all further liability or obligation under the same; all of which *was done and performed by the plaintiff, and said sum of money retained by said defendants; and for the right and privilege which was then and there granted to *317 the said defendants, and accepted and enjoyed by them, to sell and dispose of 480 of said machiness, then manufactured and in their' possession, at a patent fee of seven (7) dollars each, instead of thirty dollars each, as provided for in said contract, cancelled as aforesaid, then and there did settle and compromise all of said several matters and claims, in the several defenses in said answer set forth.”
On this state of pleading, the case was tried to a jury, at the-April term, 1864, and a verdict was rendered for the plaintiff for* the amount of the note sued on, with interest.
Thereupon the defendants moved for a new trial, on the grounds:
1. That the verdict is against the law.
2. Because the verdict is against the evidence.
3. Because the court misdirected the jury.
The motion was overruled, and judgment was entered on the verdict.
The ruling of the court on the motion for a new trial was duly excepted to, and a bill of exceptions was taken, embodying all the evidence in the case, and the several rulings of the court during the progress of the trial. The evidence is too voluminous to be here set forth in extenso, and I must content myself with stating so-much of its substance as is necessary to show the points made by it, and the rulings of the court thereon.
The defendants below gave in evidence the original agreement, “A,” between the parties, copied as follows:
“ This agreement, made this 1st day of October, 1857, by and between Charles M. Gray, of the city of Chicago, Illinois, as the general agent of the Atkin self-raking reaper, and Eufus Dutton, ¥m. C. Davis, and Frank P. Davis, of the city of Dayton, Ohio, doing-business under the firm name of E. Dutton & Co., witnesseth:
“ That the said Gray hereby agrees and gives to the said E. Dutton & Co„ fbr and in consideration of the terms hereinafter mentioned, the exclusive right to manufacture and sell the said Atkin self-raking reaper and mower, for the *term of one year, from and after the date hereof, in all the following-named territory, to wit: . . . .
“ The said E. Dutton & Co. agree to use all fair and reasonable means to build up the reputation of, and extend the demand for, the said reaper and mower in said territory, and they also agree to use their best efforts and means to furnish a supply equal to any demands there may be in the said territory, and agree to have built, in time for the next harvest, as many reapers as the parties to this agreement shall mutually deem safe to build in view of all said reapers being sold; and, also, to-build said machines in a thorough,, *318 workmanlike manner, of well-seasoned timber, and of good material throughout.....
“ The form of the said reaper, in its several parts, to be built, as near as may be, like the same reaper built by R. Dutton for the harvest •of 1857, except such alterations and changes in the construction as may be mutually agreed upon by the parties hereto; and neither of said parties shall make any material change in the construction •of any parts of said reaper, to be built by R. Dutton & Co., unless the parties hereto shall mutually agree to the said changes; and the said Dutton & Co. hereby agree not to make any other reaper for the retail trade during the term of this contract.
“ Said R. Dutton & Co. agree to furnish to said Gray, between the first day of October and November, 1858, an exact list of all machines built by them, said list to give the number of each reaper sold, the name and post-office address of each purchaser of said reapers.
“ Said R. Dutton & Co. agree to pay said Gray, as a patent fee, the sum of thirty dollars on each and every reaper made and sold by them, as follows, to wit: One-half of said thirty dollars on the first day of November, 1858, and the balance of said thirty dollars •on the first day of January, 1859.
“ And the said Gray agrees that the said R. Dutton & Co. may .sell any and all reapers they may have on hand, and unsold, at the ■close of the harvest of 1859, in any of the aforesaid territory, upon the same terms as to patent fee of thirty dollars each; said' fee of thirty dollars on each machine to be paid to said Gray on the first day of January following *the sale of said reapers so remaining on hand, and unsold, from the harvest of 1858; provided, said ■Gray may, at his option, take said machines remaining unsold at the close of the harvest of 1858, paying the said R. Dutton & Co. therefor ninety dollars for each reaper and mower so taken. The ,said ninety dollars each for said machines, so taken by said Gray, to be deducted from that portion of patent fees due from said R. Dutton & Co., and payable on the first day of January, 1859.
“And should said Dutton & Co. fairly and faithfully carry out .and perform their part of this agreement, as hereinbefore expressed, then, and in that case, said Gray hereby binds himself, by power now vested in him, to allow a continuance of this contract for another year longer, upon the same terms and conditions as herein expressed, should said Dutton & Co. so elect, and should notify said •Gray of their wishes to do so on or before August 1,1858.
“ It is understood that the said 0. M. Gray may sell any and all reapers now remaining in this said territory, over which his agency gives him control, viz: the Atkin self-raking reaper, belonging to John S. Wright, of Chicago, in any part thereof where he can Tbest effect the sale of the same.
“ Chas M. Gray, Gen’l Agent, Rufus Dutton.
“W. C. Davis, Franklin P. Davis.”
*319 They also offered in evidence a paper (marked “ D ” in the bill ■of exceptions), of which the following is a copy, and to which is -appended what purports to be the specifications therein referred to:
“ The United States Patent Oeeice.
“ To all persons to whom these presents shall come, greeting:
“ This is to certify that the annexed is a true copy, from the record of this office, of the specification in the matter of the letters patent granted Henry Green, March 21, 1854.
“In testimony whereof, I, D. P. Holloway, commissioner of ^patents, have caused the seal of the patent office to be hereunto affixed, this 31st day of March, in the year of our Lord one thousand eight hundred and sixty-three, and of the independence of the United States the eighty-seventh.
[seal.] “ D. P. Holloway.”
And the defendants below further offered to prove that material parts of the Atkin self-raking reaper and mower were identical with the machine in said specifications described.
To the introduction of these papers in evidence, and the further proof offered in connection therewith, the plaintiff below objected. The court sustained the objection. The defendants below excepted, and this ruling of the court is assigned for error.
We are of opinion that the court did not err in refusing to permit these papers to go. in evidence. The paper purporting to be specifications for a patent filed in the office of the commissioner of patents, could afford no proof of the granting, or of the existence of a patent, based upon those specifications. Nor is the mere certificate of the commissioner of jiatents, though authenticated by his official seal, that such patent was issued and now remains in force, competent evidence of the facts so certified. The proper evidence of the patent would have been a copy of the patent itself, duly authenticated by the oficial certificate and seal of the commissioner.
The defendants' below also gave in evidence the testimony of a large number of witnesses, tending strongly to show that the “ self-acting- reaper,” so called, attached to the reaper and mower referred to, unless in very exceptional cases, where the ground was smooth and level, and the grain was standing very evenly and erect, was entirely useless and of no value whatsoever; but tending, at the same time, to show that the reaper and mower alone, divested of the apparatus for raking, was useful, though inferior to some other mowers and reapers in common use.
*320 On the trial, "William C. Davis, one of the defendants below, testified as a witness in his own behalf; and in the course of his cross-examination by plaintiff below, the papers ^marked “B” and “C” — the latter being indorsed in Davis’ handwriting on the back of the original agreement “A” — were called out and admitted in evidence. The papers “B” and “C” are copied as follows:
“B.”
“This agreement, made this thirty-first day of January, eighteen hundred and fifty-nine (1859), by and between James Clapp, of the city of Chicago, State of Illinois, assignee of John S. Wright, of the city of Chicago, State of Illinois, owner and proprietor of the Atkinself-raking reaper and mower, and William C. Davis and Franklin P. Davis, of the city of Dayton, and State of Ohio, and doing business under the firm name of W. C. Davis & Co., witnesseth:
“ That for and in consideration of the condition and terms hereinafter mentioned, the said James Clapp doth license and permit the said W. C. Davis & Co. to the exclusive right to build, use, and sell the said Arkin patent, in all the following-named territory, to-wit: The State of Ohio, Kentucky, Tennessee, and all that part of the State of Indiana lying south of a line twenty miles south of the Fort Wayne and Chicago Railroad, and the counties of Massac, Hardin, Lawrence, Richmond, Pope, Saline, Gallatin, White, Hamilton, Wayne, Edward, Wabash, Clay, Jasper, Crawford, Clark, Cumberland, Coles, Edgar, and Vermillion (except that portion of said county lying north of Champaign county), in the State of Illinois, and Virginia, west of the mountains.
“ The said W. C. Davis & Co. agree to make the Atkin reaper the leading article in their manufacture, and use their efforts in building up its reputation, and creating a demand for the same, and build as many as, in their opinion, it will be safe to build in view of the whole of them being sold.
“ The said W. C. Davis & Co. agree to stencil or stamp on each of said reapers built by them, the name and date of the Atkin and other patents used in their construction, in accordance with the-requirements of the patent laws of the United States.
“ The said W. C. Davis & Co. are hereby guaranteed and permitted to use, in manufacturing the Atkin reaper and *mower, theHussey guard and the Murray patent on the sickle, free of any cost, other than named as patent fee herein. The use of the Hussey guard to be had by said Davis & Co. exactly in conformity with the condition and penalties in the permits by Obed Hussey to John S.. Wright, dated May first, eighteen hundred and fifty-seven. All other patents that [but] the Atkin, Hussey, and Murray, which may be used by said W. C. Davis & Co. in the construction of the Atkin reaper and mower, are to be used at their own risk and cost. It is hereby agreed that any patents which may be used in the con *321 struction of the Atkin reaper and mower, the right to use which may be secured by said John S. Wright or James Clapp, shall, in that event, be used by said Davis & Co. free of all costs to them after such rights may be secured by said Wright and Clapp.
“ Said W. C. Davis & Co. agree to keep a correct account of all Atkin reapers built and sold by them, and to render said account to said James Clapp, or his agent, on or before the first day of October in each year, during the term of this agreement; said account to give the name and post-office address of each purchaser, as near as practicable.
“Said W. C. Davis & Co. agree to pay said James Clapp, assignee, or his legal representatives, as a patent fee, the sum of seven dollars for each and every Atkin reaper built and sold by them; and they hereby agree to give their paper on the first day of October in each year, payable on the first day of November (J) one-third, first, day of December (-J) one-third, and on the first day of January Q-} one-third, for the full amount of said patent fee on all of said At-kin reapers and mowers sold by them prior to said first day of October, in each year.
“ This agreement to be in full force and effect from and after the date thereof, and for the years 1859, and until the month of November, 1860. Should the said W. C. Davis & Co. have any reapers and mowers left over from the sale of 1860, they are hereby permitted to sell said reapers and mowers, at any time, in any of the aforesaid territory, after the expiration of this agreement, they paying to said James Clapp the %om of seven dollars each, on or before the first day of December following the sale of said machines.
“It is hereby agreed that James Clapp, or his agent, may sell any or all machines he may have on hand in said territory; said machines belonging to the assets of John S. Wright.
“The said W. C. Davis & Co. agree to consult C. M. Gray, general agent, in case any change may be desired in the construction of the Atkin reaper differing from those made by E. Dutton & Co. for harvest of 1858.
“Interlineations referring to payment of patent fees, and erasure following the time named for payment of patent fee, made before signing.
“ The parties agreeing to the foregoing, have signed their names, in the city of Dayton, this first day of February, 1859.
“ W. C. Davis,
“ Franklin P. Davis,
“ James Clapp,
“ Witness: “ By Charles M. Gray, Agent.
“ L. Patterson.”
“ C.”
“ Received, Dayton, February 1, 1859, of W. C. Davis & Co., successors to R. Dutton & Co. (parties named in this contract), their *322 five several notes, amounting in the aggregate to eight thousand nine hundred and thirty-five dollars and sixty-seven cents, and their obligation for the payment of one thousand dollars to Messrs. Howard & Co., of Buffalo, N. Y.; this amount of $9,935.67 being in full for patent fees as contemplated herein, on the sale of the Atkin eelf-raking reaper and mower, as named in this contract; which contract is now void and of no further effect. There being 320 machines sold and settled for under it, and 480 machines in addition built and now unsold, and which 480 machines are to come under the new contract this day made with said W. C. Davis & Co., which allows them to sell said 480 reapers and mowers, together with any more they may build, at a patent fee of seven dollars each, instead of thirty dollars, as named in this contract.
“ Charles M. Gray, Agent.”
*The defendants below aíso offered to prove that they had derived no profit from the manufacture of said Atkin’s self-raking reaper and mower, under said contract, but by reason of the worthlessness of the patent of Jearum Atkin, they lost heavily and sustained no benefit. This proof the .court refused to admit; defendants below excepted; and this is assigned for error.
We pass this point without remark, as it becomes unimportant by reason of the ruling of the court, hereafter to be noticed.
The defendants below having closed their evidence, the plaintiff below moved the court to exclude from the jury all the testimony given by the defendants below which relates to, or tends to prove, the invalidity of the Atkin patent, either on account of its want of value or want of novelty; and also to exclude from the jury all the testimony which tends to prove that the right to make and sell Atkin’s self-raking reaper and mower was of no value; which motion the court sustained, and excluded said testimony from the jury; to which ruling of the court the defendants below excepted, .and here assign the same for error.
The plaintiff below having given in evidence an authenticated ■copy of the letters patent to Jearum Atkin, and the testimony of .several witnesses, in respect to the character and operation of the machine manufactured by the defendants below, ostensibly under that patent, rested their case.
And thereupon the court charged the jury, among other things, “ that if there were any valid patents on any part of the machine called Atkin’s self-raking reaper and mower which the said John ¡S. Wright had not, at the time of the execution of the contract *323 marked ‘A,’ a right or license to use and sell to the defendants, then the title to said reaper and mower would have failed, and the plaintiff would not have a right to recover. But that, under the pleadings, it became the duty of defendants to show the same by certified copies of patents from the patent office, that there were such patents, and that unless defendants did so show the existence of valid patents, for parts of said machines, that defense would fail.” To which ruling, the defendants excepted.
*It seems to us that this charge of the court is, at least, so far unexceptional that the defendants below have no right to complain of it. Letters patent in full are matters of public record;, they are accessible to all, and duly authenticated copies of them are readily attainable by litigants. They themselves afford the best evidence of what is covered by them. It is an elementary principle of the law of evidence that parties are required to produce the best and most certain evidence attainable; and when the defendants below claimed that a part, at least, of the rights ostensibly guaranteed to them by their contract with the plaintiffs below would, if exercised, be an infringement of prior patents, and so a failure of consideration for the contract into which they had entered, there was no hardship and no wrong in requiring them to show the infringement by the production of an authenticated copy of the patent claimed to be infringed. And the burden of proof was on them. Prima facie, they were liable on their pr-omissory note. They set up as a defense, a failure of consideration; they held the affirmative of this issue, and were bound to establish it.
But the leading and dominant question in the case is that which arises on the action of the court in ruling from the jury the greater part of the testimony given by the defendants below, by means of which they sought to establish a failure of consideration for the note on which they were sued, by proving the practical and substantial worthlessness of the machine they were to manufacture. And in order to understand what seems to have been the view of the court below on this ruling, we must recur to the written contracts between these parties, notice their respective dates, what were their stipulations, and what tvas done under them.
The original contract bears date October 1, 1857, and stipulates for the payment, by the defendants to the plaintiffs below, of a patent fee of thirty dollars on each machine made and sold by the former. Under this contract, and prior to the' execution of the *324 second contract by wbicb the first was rescinded, and all claims under it adjusted by the parties, they had manufactured eight hundred machines, three hundred and twenty of which they had sold, and four hundred *and eighty of which remained on hand undisposed of. The second contract bears date February 1, 1859, a period of seventeen months after the date of the first, during which time the defendants below, in their personal testimony on the trial, admit they had ample opportunity to observe, and did observe, the capacity and the actual working of the machine, and actually enjoyed, without interruption, all that purported to be granted to them by the license under which they acted. They entered into the new contract, and into an accord in respect to what was done and due under the old one, with their eyes open. And it is evident that the now contract was the result of a compromise of conflicting or divergent claims ; for, under the old contract, the defendants below were bound to pay a royalty of thirty dollars on each machine manufactured and sold, while, under the new one, this royalty was reduced to seven dollars on the four hundred and eighty machines then on hand, and on all others thereafter to be manufactured and sold. The note sued on was one of the- notes given under, and in pursuance of this last contract. There is in the case neither allegation nor proof that the defendants below ever failed to recover any amount due them for machines sold, or that they were ever made answerable in damages, on warranty or otherwise, by reason of defects in such machines or in their operation.
Now, on this state of fact — the defendants below having compromised for the amount due from them under the first contract,, and, by virtue of such compromise, obtained a material reduction of that amount; and having fully enjoyed, without interruption, everything for which they stipulated in the contract under which they proceeded, are they not estopped to deny a consideration for the note given by them on such compromise, after such enjoyment, and after full opportunity.of judging of the character of the machine, and of the value of the privilege which formed the subject-matter of their dealings ? We are of the opinion that they are so estopped. And this view of the case is well sustained by authority. Laws v. Purser, E. L. & E. 48; Cutter v. Bower, 11 Ad. & E. 253; Bowman v. Taylor, 2 Ad. & E. 278; Kinsman v. Parkhurst, 18 How. U. S. 292; Bartlett v. Holbrook, *1 Gray, *325 114; Wilder v. Adams, 2 W. & M. 329; Kernodle v. Hunt, 4 Blackf. 57. If we are right in this view of the case, there was no error in the ruling out, by the court below, of the evidence as to the want of value and want of novelty of the machine, in respect to which the parties had contracted.

Judgment affirmed.

Day, C. J., and White, Welch, and Scott, JJ., concurred.